UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT DAVIS | CIVIL ACTION 1:16-CV-01534 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| SANDY MCCAIN, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Plaintiff Robert Davis filed a Motion for a Preliminary Injunction (Doc. 39). Davis's Motion for Preliminary Injunction should be granted.

I.  **Background**

Davis filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983, *in forma pauperis*, which was amended twice (Docs. 1, 26, 30). Davis is confined in the Raymond Laborde Correctional Center (RLCC") in Cottonport, Louisiana. The remaining Defendants are Sandy McCain (former warden of RLCC), Troy Poret (Deputy Warden for Security at RLCC), Rodney Slay, (Deputy Warden for Administration at RLCC)), Blaine Villemarette (Assistant warden for the medical department at RLCC), Jude Pitre (Business Office Administrative Director at RLCC), Lt. Bonnette (canteen lieutenant at RLCC), and James LeBlanc (Louisiana Secretary of the Department of Corrections). Davis alleges an Eighth Amendment claim of unconstitutional conditions of confinement. Davis claims that he, and the other

inmates, are being continually exposed to secondhand smoke.[1]  Davis seeks a declaratory judgment, injunctive relief, and monetary damages (Doc. 1).

Davis filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 39) to have the Court order the prison officials to prohibit all smoking in the prison.  Davis contends that exposure to ETS may cause him irreparable harm.

Davis contends inmates purchase smokeless tobacco and dry it in the microwave, giving off an offensive smell throughout the unit (Doc. 39).  The tobacco is then rolled in "thin sheets of Bible pages" and smoked (Doc. 39).[2]  Davis alleges inmates are smoking in the common areas, which are permeated with ETS (Doc. 39).  Davis alleges the ETS causes him "to become dizzy, coughing, breathing difficulties, and respiratory problems" (Doc. 39).

Davis' Motion for a Temporary Restraining Order was denied (Docs. 45, 48).  A hearing was held before the undersigned as to Davis's Motion for Preliminary Injunction (Docs. 45, 48, 59).

---

[1] La. R.S. § 40:1291.3(13): "'Secondhand smoke' means smoke emitted from lighted, smoldering, or burning tobacco when the smoker is not inhaling, smoke emitted at the mouthpiece during puff drawing, and smoke exhaled by the smoker."

[2] This is not the first time this Court has heard complaints of smokeless tobacco being dried in a microwave and then smoked.  See Lee v. Burke, 2007 WL 4608730, *3 (W.D. La. 2007) (report and recommendation; United States Penitentiary in Pollock, Louisiana)); Gipson v. McCain, 2018 WL 633762, *1 (W.D. La. 2018) (in the Raymond Laborde Correctional Center in Cottonport, Louisiana).  See also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1369, n. 9 (Fed. Civ. 2008), cert. den., 556 U.S. 1106 (2009) (acknowledging use of microwave to cure tobacco).

## II. Law and Analysis

### A. The law as to preliminary injunction.

In order for Davis to obtain a preliminary injunction, he must show: (1) a substantial likelihood that his cause will succeed on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm the injunction may do to the opposing party, and (4) that the court granting the injunction will not disserve the public interest. See Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430 (5th Cir. 1981). The burden of persuasion on all four requirements for a preliminary injunction is on the plaintiff. See Canal Authority, State of Florida v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974).

The grant or denial of a preliminary injunction rests in the sound discretion of the trial judge, and will not be disturbed upon review unless there is an abuse of discretion. See Commonwealth Life Ins. Co. v. Neal, 669 F.2d 300, 303 (5th Cir. 1982). If granted, an injunction must "state its terms specifically" and "describe in reasonable detail" the conduct restrained or required. See Fed. R. Civ. P. 65(d); see also Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C., 710 F.3d 579, 586 (5th Cir. 2013). The court "must narrowly tailor an injunction to remedy the specific action which gives rise to the order." See Daniels Health Sciences, L.L.C., 710 F.3d at 586 (quoting John Doe # 1 v. Veneman, 380 F.3d 807, 818 (5th Cir. 2004)).

B.  The Eighth Amendment and second-hand smoke in prisons.

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, including food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (and cases cited therein).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind–deliberate indifference to a prisoner's constitutional rights–to be subjected to a § 1983 liability to that prisoner. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hare, 74 F.3d at 648. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See Farmer, 511 U.S. at 837. An official's

failure to alleviate a significant risk that he should have perceived but did not, while not cause for commendation, cannot under our cases be condemned as the infliction of punishment. See Farmer, 511 U.S. at 837; see also Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).

In Helling v. McKinney, 509 U.S. 25, 33-35 (1993), the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of ETS. The Supreme Court identified both objective and subjective elements. See Hicks v. Correctional Corp. of America, 2009 WL 2969768, *5 (W.D. La. 2009). Objectively, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. See Hicks, 2009 WL 2969768, *5. Subjectively, the plaintiff must prove deliberate indifference, considering the officials' current attitudes and conduct, and any policies that have been enacted. See Hicks, 2009 WL 2969768, *5. Therefore, to obtain relief, a prisoner must prove not only that the level of ETS to which he is exposed is unreasonable, but also that prison officials have shown "deliberate indifference" to the health risks associated with second-hand smoke. See Hicks, 2009 WL 2969768, *5.

In Helling, 509 U.S. at 35, the Supreme Court also held that an inmate states a cause of action under the Eighth Amendment by alleging that prison officials have,

with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his *future* health.

This Court has previously taken judicial notice of the United States Surgeon General's June 2006 report,[3] which establishes conclusively that exposure to second-hand smoke is unhealthy and dangerous, and that scientific evidence shows there is no safe level of exposure to second-hand smoke. See Hicks, 2009 WL 2969768, *6-*7; F.R.E. rule 201. The Surgeon General found that exposure to second-hand smoke has immediate adverse effects on the cardiovascular system and causes coronary heart disease and lung cancer.

On the subjective component, the adoption of a smoking policy bears heavily on the inquiry into deliberate indifference. See Hicks, 2009 WL 2969768, *5. In 2006, Louisiana enacted the Louisiana Smoke Free Air Act, 2006 La. Acts No. 815, in La. R.S. 40:1291.2, et seq.,[4] which prohibits smoking in all public places and, effective August 15, 2009, prohibits smoking in any state, local, or private correctional facility. See La. R.S. 40:1291.11(B)(14).

### C. There is a substantial likelihood that Davis's cause will succeed on the merits.

Davis must first show there is a substantial likelihood that his cause will succeed on the merits. To show a likelihood of success, the plaintiff must present a *prima facie* case, but need not prove that he is entitled to summary judgment. See

---

[3] Available at https://www.ncbi.nlm.nih.gov/books/NBK44328/#rpt-smokeexp.ch1.s6.

[4] Section 1291.2 states in part: "[I]t is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to secondhand smoke."

Daniels Health Sciences, L.L.C., 710 F.3d at 582 (citing Janvey v. Alguire, 647 F.3d 585, 595–96 (5th Cir. 2011)). To assess the likelihood of success on the merits, we look to "standards provided by the substantive law." See Janvey, 647 F.3d at 596.

At the hearing, Davis testified that he has been getting migraine headaches in prison from the smokeless tobacco. Davis testified that inmates light their tobacco by burning some paper they have rubbed a pencil on in the microwave. The inmates tear the thin pages out of Bibles to roll their tobacco with. They also burn the tobacco in the microwave to smoke it. Davis testified that his dorm, Cajun Dorm, has 8 tiers, each of which house 44 inmates. Davis contends 92 percent of the inmates smoke. There are two microwaves in the dorm, both in the day room where inmates watch TV and eat. Davis claims the inmates who smoke sit in the day room, roll their cigarettes, and smoke. Davis testified they also smoke in the TV room and the bed areas. Davis contends the fans in each tiers do not dissipate the smoke, which hovers. Even in the summer, when the windows are open, the smoke is still at a high level.

Davis further testified that the corrections officers do not stop the inmates from lighting paper and burning tobacco in the microwaves, or from smoking. Davis contends he just went to the ENT doctor, who told him that being exposed to second-hand smoke is having an adverse effect on him.

Davis and Nolan Davis testified the inmates purchase smokeless tobacco in the canteen (Kodiak and Grizzly brands[5]), dry it in the microwaves, and smoke it in the day room, the TV room, and the sleeping areas.

It is well-established that second-hand smoke is dangerous. Most courts in this district have given judicial notice to the Surgeon General's 2006 report documenting the health consequences of involuntary exposure to tobacco smoke, and stating the scientific evidence indicates there is no risk-free level of exposure to secondhand smoke. See Tilmon v. Keith, 2016 WL 6662470, *1 (W.D. La. 2016) (Alexandria Division); Samuels v. Terrell, 2015 WL 4092868, *5 (W.D. La. 2015) (Lake Charles Division); Samuels v. Arnold, 2014 WL 1340064, *3 (W.D. La. 2014) (Shreveport Division); Williams v. Johnson, 2014 WL 2155211, *4 (W.D. La. 2016) (Monroe Division).[6] Davis also testified that he currently suffers from hypertension, and that second-hand smoke causes or contributes to his difficulty breathing.

As to the subjective component of his claim, both Davis and Nolan Davis testified they have submitted grievances complaining they are being subjected to second-hand smoke and noxious odors from the drying and smoking of "smokeless tobacco" inside the prison by other inmates. Davis and Nolan Davis both contend the prison officials have denied their allegations, and complained they did not specify who

---

[5] Grizzly and Kodiak are brands of smokeless dipping tobaccos manufactured by American Snuff Company, which is owned by Reynolds American, Inc. See American Snuff Company at https://www.americansnuffco.com/home/brands/.

[6] There are no cases from the Lafayette division on this issue.

is smoking in the dorm. Moreover, when an inmate is caught smoking tobacco, he is verbally reprimanded but is not written up.

Defendants rely on the fact that they have adopted a policy, in accordance with state law, that bans smoking tobacco in the prison. Defendants showed they permit use of smokeless tobacco in the prison. According to Davis and his witness (Nolan Davis), Defendants sell smokeless tobacco (Grizzly and Kodiak) in the canteen instead of cigarettes or smoking tobacco.

To his credit, counsel for Defendants presented the best evidence available: a policy banning smoking in accordance with state law. But RLCC cannot simply rely on its policy banning smoking tobacco but permitting smokeless tobacco. If the smokeless tobacco is being altered and smoked in the day room, TV room, or sleeping area by inmates, the ban on smoking inside the prison is being broken. RLCC is responsible for enforcing that ban.

Davis and Nolan Davis offered unrefuted testimony that inmates are misusing the smokeless tobacco by drying it in the prison microwaves, then rolling it and smoking it inside the prison, in violation of prison policy and state law. Defendants argue, instead, that neither Davis nor Nolan Davis ever identified specific inmates who are violating the rule against smoking. However, they both testified they do not want to be attacked in their sleep for "ratting" on other inmates.

Both Davis and Nolan Davis also testified to the strong, noxious odor, caused by drying smokeless tobacco in the microwaves, that permeates the rooms and remains in the microwave until it is cleaned. They testified that Defendants could

9

not fail to smell it, as well as smell the cigarette smoke lingering in the dorm. According to Davis and Nolan Davis, the majority of the inmates in their tier smoke, which creates a lot of second-hand smoke. They both testified that inmates caught smoking tobacco by the corrections officers are verbally reprimanded, but not written up, and that overall, Defendants' minimal efforts to enforce the ban are ineffectual.

The prison officials at RLCC are responsible for enforcing the state law (and RLCC policy) prohibiting smoking tobacco in prisons. "Smoking" is defined in the Louisiana Smokefree Air Act, La. Rev. Stat. Ann. § 40:1291.3(14): "'Smoking' means inhaling, exhaling, burning, carrying, or possessing any lighted tobacco product, including cigarettes, cigars, pipe tobacco, and any other lighted combustible plant material." Therefore, if any type of tobacco is being smoked, including "smokeless tobacco," it violates RLCC policy and state law. The prison officials at RLCC have a duty to prevent RLCC inmates from smoking "smokeless tobacco."

The fact that only smokeless tobacco is now sold in the RLCC canteen does not insulate the RLCC officials from liability for its misuse by inmates. The Louisiana Smoke Free Air Act is not a ban on smoking (*adjective*) tobacco. It bans smoking (*verb*) any tobacco. The prison officials at RLCC must control the manner in which the inmates use the smoke-free tobacco.

Further, Defendants' argument that Davis failed to specify which inmates are smoking tobacco has been found inadequate, as discussed in Samuels v. Arnold, 2014 WL 1340064, *5 (W.D. La. 2014) (citing Ware v. Batson, 480 Fed. Appx. 247, 248 (5th Cir. 2010)). The odor of tobacco drying in microwaves is evidence that the "smokeless

tobacco" is being dried for smoking. Moreover, the lingering odor of tobacco smoke in the air is also evidence that tobacco has been smoked inside the prison.

The United States Court of Appeals for the Fifth Circuit has held that allegations such as Davis's are sufficient to state a claim for ETS exposure. See Bruce v. Little, 568 Fed. Appx. 283, 286 (5th Cir. 2014). Davis has set forth a *prima facie* case, at least for injunctive relief, that the ban on smoking tobacco at RLCC is being violated by inmates, and is not being adequately enforced by RLCC prison officials.

Insofar as monetary damages for deliberate indifference to Davis's serious medical needs and the risk of future harm, Davis has adduced some evidence to show that inmates are permitted to dry smokeless tobacco and smoke it, without fear of consequences, in RLCC. Davis has alleged the effects second-hand smoke has had on this health so far, and his concerns for his future health. Davis's efforts to recover damages are far from complete or certain, but are sufficient to support a request for preliminary injunctive relief.

Therefore, there is a substantial likelihood that Davis will succeed on the merits of his claim, at least as to his request for a permanent injunction.

### D. There is a substantial threat of irreparable injury if the injunction is not granted.

Next, Davis must show there is a substantial threat of irreparable injury if the injunction is not granted. To satisfy this prong of the preliminary injunction test, Davis must show he is "likely to suffer irreparable harm," that is, harm for which there is no adequate remedy at law. See Daniels Health Sciences, L.L.C., 710 F.3d

at 585 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

In the "Major Conclusions" of a 2006 report by the United States Surgeon General, the Surgeon General found that exposure to second-hand smoke has immediate adverse effects on the cardiovascular system and causes coronary heart disease and lung cancer. Again, there is no risk-free level of exposure to secondhand smoke.[7] The Court takes judicial notice of the Surgeon General's conclusions pursuant to Fed. R. Evid. rule 201.

Defendants argue that Davis has not shown there is a substantial threat of irreparable injury if the injunction is not granted. However, Davis alleged hypertension and difficulty breathing as a result of the second-hand smoke in RLCC. Moreover, as stated in Helling, 509 U.S. at 35, Davis may show an unreasonable risk of serious damage to his future health from exposure to second-hand smoke.

Therefore, Davis has alleged there is a substantial threat of irreparable injury if the injunction is not granted.

### E.  There is no threatened harm to Defendants.

Davis must show that the threatened injury to himself outweighs the threatened harm the injunction may do to the Defendants. Since Defendants have a legal duty to enforce the Louisiana state law prohibiting smoking tobacco in prisons, an injunction ordering them to comply with that legal duty will not cause them harm.

---

[7] 2006, "The Health Consequences of Involuntary Exposure to Tobacco Smoke, A Report of the Surgeon General," *available at* https://www.ncbi.nlm.nih.gov/books/NBK44324/.

Moreover, Defendants have not argued they will be harmed by an injunction banning smoking any tobacco, and the creation of smoking-tobacco from smokeless tobacco, in RLCC.

### F. Granting the injunction will serve the public interest.

Finally, Davis must show that granting the injunction will not disserve the public interest. The Louisiana Smokefree Air Act makes it clear that secondhand smoke disserves the public interest:

> [I]t is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to secondhand smoke.

40 La. R.S. § 1291.2. Therefore, an injunction to enforce the state prohibition against smoking tobacco in prison will clearly serve the public interest.

Since Davis has carried his burden of showing he is entitled to a preliminary injunction, his Motion for a Preliminary Injunction (Doc. 39) should be granted.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Davis's Motion for a Preliminary Injunction be GRANTED, and that Defendants be ORDERED to enforce the state ban on smoking tobacco of any kind, including smokeless tobacco, in the Raymond Laborde Correctional Center.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such

as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __19th__ day of September, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge