UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ROBERT DAVIS #96564            CIVIL ACTION NO. 16-cv-1534

VERSUS            CHIEF JUDGE HICKS

SANDY MCCAIN, ET AL            MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Robert Davis ("Plaintiff") is a self-represented prisoner who filed this action against several prison officials at the Raymond Laborde Correctional Center ("RLCC"), which was formerly known as Avoyelles Correctional Center. Plaintiff alleged in his complaint that he was exposed to excessive levels of environmental tobacco smoke ("ETS") because other inmates would dry smokeless tobacco in the microwave and smoke it. He alleged that prison officials did not adequately enforce the rules against such smoking.

The claims against defendants Wayne Millus and Casey McVea were dismissed by prior order. Docs. 31 & 32. Before the court is a Motion for Summary Judgment (Doc. 72) filed by remaining defendants DOC Secretary James LeBlanc, Warden Sandy McCain, Troy Poret, Rodney Slay, Blaine Villemarette, Jude Pitre, and Stephanie Bonnette. Plaintiff did not file any timely opposition to the motion. For the reasons that follow, it is recommended that the motion be granted and all remaining claims be dismissed.

**ETS Exposure and the Eighth Amendment**

The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, the prisoner must show that he is being exposed to unreasonably high levels of environmental tobacco smoke. Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993). In assessing that factor, the court must conduct an inquiry into the seriousness of the potential harm and the likelihood that the smoke will actually cause such harm. Id. The court also has to determine whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Id. Second, and most relevant to the motion at hand, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight. Id.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett,

106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S.Ct. 1348, 1355-56 (1986).

**Defendants' Summary Judgment Evidence**

Warden Sandy McCain testified in an affidavit that he has been employed by the DOC since 1996 and has been the warden at RLCC since July 2016, which is when Plaintiff became an inmate at the prison. McCain described how the DOC adopted a new smoking policy after the legislature enacted the Louisiana Smoke Free Air Act in 2006. The new policy, effective in August 2009, prohibited smoking inside areas of public buildings and places of employment operated by the DOC, but "each Unit Head is authorized to designate smoking areas outside of these public buildings and places of employment."

RLCC adopted a similar policy in 2009 that prohibited smoking inside areas of every public building. It ordered that all outdoor smoking for offenders had to cease between the sundown count and the time a designated smoking area opened the following morning. Smoking was prohibited on walkways and when going to and returning from any callout. Offenders were only allowed to smoke on recreational yards and outside work areas. Offenders housed in segregation or lockdown areas were prohibited from possessing, smoking, or using tobacco products. The policy stated that offenders found smoking in nonsmoking areas would be subject to disciplinary penalties. The use of smokeless tobacco inside buildings was prohibited.

Warden McCain testified that his policy was enforced at RLCC "until smoking was prohibited at all state correctional facilities (which included RLCC) effective July 2015."

It appears that cigarettes and other smoking tobacco products are no longer allowed in RLCC, but smokeless tobacco is allowed and is sold in the canteen.

Warden McCain testified that at no time after the 2009 revision of policy were offenders housed at RLCC allowed to smoke in a unit or on a tier of an RLCC dormitory. He denied that inmates housed in the same unit as Plaintiff were given permission or allowed to smoke in the housing unit. He also denied that offenders housed at the facility were allowed to use smokeless tobacco in a housing unit or tier of a dormitory.

Warden McCain testified Plaintiff was relocated to RLCC in July 2016. In November 2016, Plaintiff filed an administrative remedy grievance, a copy of which is attached to Warden McCain's affidavit. Plaintiff alleged in the grievance that he was being exposed to secondhand smoke in the dorm despite the no smoking policy. He stated that "officers don't do anything about the offenders that smoke" and that there were officers who smoked outside on the walk. Plaintiff asserted that the smoke in the TV room and lobby was so thick that it burned his eyes and caused him to cough or sneeze.

Deputy Warden Troy Poret responded to the grievance by noting that Col. Samuel Johnson had questioned Plaintiff about which prisoners or employees were smoking, but Plaintiff refused to give any names. Poret wrote that "no employee is permitted to bring any tobacco down the walk or any housing unit and if any offender is seen smoking, then the offender is issued a Disciplinary Report for a Rule #1 (Contraband)." Plaintiff pursued the grievance to the Secretary level and said he feared for his life if he gave the names of the persons who were smoking. The Secretary's designee denied relief after finding that the original response had addressed the issue appropriately.

Warden McCain testified that at no time since Plaintiff arrived at RLCC in 2016 "did offender Robert Davis, either verbally or in writing, bring to my attention, or the attention of any RLCC correctional officer, a smoking violation, along with the name of the violator." McCain stated that the lack of knowledge of any alleged violator makes it difficult to punish a person, which would more effectively enforce the smoking ban. McCain testified that offenders who violate the smoking policy on the use of smokeless tobacco inside buildings are punished when caught, and he attached some examples of disciplinary citations issued for smoking infractions.

Defendants also submitted Plaintiff's deposition testimony. Plaintiff testified that there were two microwaves in the dorms, and inmates would use them to dry out smokeless tobacco that they purchased in the prison canteen. The inmates would then mark a piece of paper with a pencil and use the microwave to catch it on fire. They used that to light their improvised smokes. Plaintiff testified that inmates smoked all day, all over the dorms, in the TV room, and in the lobby.

But Plaintiff admitted that when officers would see an inmate using the microwave in that manner, the officer would take out the tobacco and throw it in the garbage. He said that the officers "used to write them up for it, but they don't write them now." He admitted that the officers did not let the inmates smoke in front of them, and if they saw an inmate smoking, they would immediately stop him.

Plaintiff stated that no one smoked in the area where he sleeps, but some inmates did smoke further back in the dorms in the lobby and TV room. Counsel then asked Plaintiff to describe his daily activities and whether he was exposed to ETS during various

times. Plaintiff then admitted, "[W]here I stay at, I mean where I sleep at, ain't nobody smoke in that area. The dudes in my area don't smoke." Plaintiff said he started his day by going to the gym to work out from about 8:00 a.m. until 10:00 a.m. He was asked if people smoked there, and he said, "No, not in the gym." Plaintiff said that from 10:00 a.m. to 11:30 a.m., he would go to his bed in his dorm, and no one was smoking around him during that time. He would go to lunch from 11:30 a.m. to 12:00 p.m. He was asked if there was smoking in the lunch room, and he answered, "No, sir, that's in the kitchen." Plaintiff said that after lunch he would go on the yard and stay until about 3:00 p.m. in the outdoor area that included a basketball court and a weight area. He was asked if there was smoking on the yard and answered, "I mean they do it out there." He would return to his dorm at 3:00 p.m. and sit on his bed until the count finished around 4:00 p.m.; there was no smoking in his area during that time. He would then go to dinner, where there was no smoking. Afterward, from about 5:00 p.m., he would watch TV. He said that other inmates would smoke in the area where he watched TV, and the guards would be engaged in shift change or checking tills. Plaintiff would return to his dorm "[w]here they don't smoke" at about 7:00 p.m., where he would spend the night.

**Analysis**

The first prong of the <u>Helling</u> standard is whether Plaintiff was exposed to unreasonably high levels of ETS. There is some evidence that Plaintiff was exposed to ETS, and this court has taken judicial notice of a 2006 Surgeon General report on the health consequences of involuntary exposure to tobacco smoke. The report stated that scientific evidence indicates that there is no risk-free level of exposure to secondhand smoke, so that

breathing even a little can be harmful to health.  See Samuels v. Arnold, 2014 WL 1340064, *3 (W.D. La. 2014).

Defendants do not specifically challenge Plaintiff's claim on that first prong of Helling, but the Fifth Circuit has stated that although "sporadic and fleeting exposure to second-hand smoke might have been unwelcome and unpleasant, it did not constitute 'unreasonably high levels of ETS.'"  Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001), quoting Helling.  Thus, summary judgment was proper when the summary judgment record did not include competent evidence that an inmate's intermittent exposure to smoke during bus rides was an unreasonable risk to his health.  Id.  And "to the extent that the smoke caused the inmate discomfort (e.g., coughing and nausea), it did not reach the level of a constitutional violation."  Id.  See also Allen v. Morgan, 66 F. App'x 526 (5th Cir. 2003) ("Because Allen's sporadic and fleeting exposure to environmental tobacco smoke (ETS) did not constitute unreasonably high levels of ETS, the district court did not err in granting summary judgment and dismissing this claim as frivolous.").  Plaintiff alleged a prison environment permeated with smoke day and night, but his own testimony indicates that the exposure actually was for only short periods in limited locations.

Defendants base their motion primarily on a challenge that Plaintiff cannot prove that any one of the defendants demonstrated a deliberate indifference to his plight. Deliberate indifference will be found only where the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 114 S.Ct. 1970, 1984 (1994).  The official "must both be aware of the facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference." Id. at 1979. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id.

Defendants presented summary judgment evidence that they had in place an anti-smoking policy, and they enforced the policy when violations were observed. Plaintiff admitted at his deposition that officers immediately stopped any violator who was seen smoking or microwaving/drying tobacco. Plaintiff was asked in his deposition if he had any interactions, as far as his complaint, with Sandy McCain, Troy Poret, Rodney Slay, Blaine Villemarette, Jude Pitre, or James Leblanc. Plaintiff answered "No, sir" as to each of those defendants. He did not describe any specific complaints to or conversations with any of the defendants related to smoking. He said that he filed only one grievance about the issue.

Defendants satisfied their summary judgment burden by challenging Plaintiff's ability to prove that any of them acted with deliberate indifference to Plaintiff being exposed to ETS. Plaintiff did not respond to the motion and shoulder his burden by pointing to competent evidence that would create a genuine issue of material fact on that critical element of his claims. Defendants are, therefore, entitled to have their unopposed motion for summary judgment granted.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 72) be granted and that all claims against all remaining defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of December, 2019.

_____
Mark L. Hornsby
U.S. Magistrate Judge